**Noble D. MAYS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68824.**

Court of Criminal Appeals of Texas, En Banc.

June 29, 1983.

S. Price Smith and J. Keaton Grubbs, Wichita Falls, for appellant.

Timothy D. Eyssen, Dist. Atty. and Donald E. Maxfield, Asst. Dist. Atty., Wichita Falls, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

Noble D. Mays, appellant, was convicted of committing the offense of murder while in the course of committing the offense of robbery, which constitutes capital murder. See V.T.C.A., Penal Code, Section 19.-03(a)(2). Thereafter, the jury answered in the affirmative certain statutory special issues, see Art. 37.071, V.A.C.C.P., and the trial judge assessed appellant's punishment at death. We reverse the judgment of conviction because of *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1980), error.

Appellant did not testify or present any testimony or evidence at the guilt stage of the trial, and at the punishment stage his only witness was a consulting statistical psychologist, who had not examined him.

## I. ESTELLE V. SMITH

The United States Supreme Court, in *Estelle v. Smith,* Id., held that where a defendant has been indicted for committing capital murder, and an attorney has been appointed to represent him, the defendant has a Sixth Amendment right to the assistance of that counsel before submitting to a pretrial psychiatric interview. The basis for such holding is that "the decision to be made regarding the proposed psychiatric evaluation is 'literally a life or death matter' and is 'difficult ... even for an attorney' because it requires 'a knowledge of what other evidence is available, of the particular psychiatrist's biases and alternative strategies at the sentencing hearing... It follows logically from our precedents that a defendant should not be forced to resolve such an important issue without 'the guiding hand of counsel.'" 101 S.Ct. at 1877, 68 L.Ed.2d 374.

This holding is in accord with past decisions of the Supreme Court on the constitutional right to counsel and the assistance of counsel. Previously, in *Kirby v. Illinois,* 406 U.S. 682, 688–689, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972), the Court had held that a person is entitled to the assistance of a lawyer "at or after the time that adversary judicial proceedings have been instituted against him ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Also see *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967).

Of course, a defendant who is accused of committing capital murder, and is represented by counsel, but who has been ordered to participate in a pretrial psychiatric examination, may waive his right to counsel or the assistance of counsel. However, there is a presumption against waiver of the constitutional right to counsel or the assistance of counsel. *Johnson v. Zerbst,*

304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

The facts in *Estelle v. Smith,* supra, reflect that the trial court, on its own volition, without notice to counsel, and without conducting any hearing, ordered the defendant Smith to be examined by a psychiatrist in order to determine whether the defendant was competent to stand trial. At the time the order issued, the issue of competency to stand trial had not been injected into the case by the defendant. Dr. James Grigson, the same psychiatrist who examined appellant, examined the defendant Smith, and found Smith to be competent to stand trial. Subsequently, at the punishment stage of the trial, without prior notice to counsel, Grigson was permitted to testify to the future dangerousness of Smith. Thereafter, the jury answered in the affirmative the statutory special issues which were submitted to it, and the trial court assessed Smith's punishment at death. See Art. 37.-071, V.A.C.C.P. The Supreme Court ordered Smith's punishment of death vacated. Before doing so, it stated the following:

> Here, respondent's Sixth Amendment right to counsel clearly had attached when Dr. Grigson examined him at the Dallas County Jail, and their interview proved to be a 'critical stage' of the aggregate proceedings against respondent... Defense counsel, however, were not notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness, and respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's finding could be employed.

## II. THE FACTS OF ESTELLE V. SMITH COMPARED WITH THIS CAUSE

There is no dispute in this cause that at the time the trial court ordered appellant to participate in the pretrial psychiatric examination he was represented by counsel. Up to a point then, the facts of this cause and *Smith* have many similarities. In *Smith,* Grigson, when he conducted his examination of the defendant Smith, was acting pursuant to a court order. In this cause, the pretrial psychiatric examination with which we are concerned also was conducted by Grigson pursuant to court order. In both causes, the main purpose of the psychiatric examination was to determine the respective defendant's competency to stand trial, although in this cause the appellant had at the time the examination was conducted injected into the cause the additional issue of sanity at the time of the commission of the offense. In this cause, the record does not reflect that it was known before the examination who would conduct the examination. The opinion in *Smith* does not reflect if, prior to the examination by Grigson, it was known that Grigson actually would conduct the examination. In neither *Smith* nor this cause was it ever stated to the respective defendant's counsel that the examination was going to encompass the issue of appellant's future dangerousness, or to what end the psychiatrist's findings could be employed during the forthcoming trial.

There are, however, some differences between the facts of this cause and *Smith.* The order in *Smith* issued ex parte, without notice to counsel and without a hearing. In this cause, the examination was ordered by the trial court after a hearing was held on the State's motion.[2] In *Smith,* the defendant had not injected into the case the issues of competency or sanity. In this cause, before the order of the court issued, appellant had injected into the case the issues of competency and sanity. Although the purpose of the State's motion in this cause is

---

2. We do not have a transcription of the record of that hearing. The order attached to the State's motion reflects in part the following: "It is THEREFORE ORDERED, that the defendant, Noble D. Mays, Jr. submit to any reasonable medical and mental examination by quali-fied medical experts in the field of mental health at such times as are reasonable, and convenient for the Sheriff of Wichita County, Texas ..." This order appears to have been signed after the hearing was held.

not reflected in the record of appeal, we assume it was presented in order to discover evidence with which to rebut appellant's stated claims that he was not competent to stand trial and was insane at the time the offense was committed. In *Smith,* however, the order issued only to satisfy the trial judge that the defendant Smith was competent to stand trial.

## III. THE OPINION OF ESTELLE V. SMITH CONCERNS GIVING NOTICE TO COUNSEL THAT THE PRETRIAL PSYCHIATRIC EXAMINATION WOULD ENCOMPASS THE ISSUE OF FUTURE DANGEROUSNESS AND TO WHAT END THE PSYCHIATRIST'S FINDINGS COULD BE EMPLOYED DURING THE TRIAL

The opinion of *Smith* clearly reflects that the Supreme Court did not concern itself with the details of a pretrial psychiatric examination, but instead was most concerned with the failure of the trial court to notify counsel in that cause that the psychiatric examination for competency purposes would encompass the issue of future dangerousness, and to what end the psychiatrist's findings could be employed during the trial of the case.

In this instance, it is undisputed that counsel for appellant was not given notice either that Grigson's examination of appellant would encompass the issue of appellant's future dangerousness or, beyond a finding regarding appellant's competency to stand trial or a finding regarding sanity at the time of the commission of the offense, to what end any other findings by Grigson could be employed during the appellant's trial. This failure by the trial court to give appellant notice of the above clearly violates the holding in *Estelle v. Smith,* supra.

Although we have noted some of the differences between the facts of *Smith* and this cause, we are unable to state that such differences are controlling. We find con-

trolling the fact that appellant's counsel was not given notice that Grigson's examination of appellant would encompass the issue of appellant's personality and to what end Grigson's findings could be employed during appellant's trial.

## IV. GRIGSON'S TESTIMONY ON THE ISSUE OF APPELLANT'S PERSONALITY THAT WAS GIVEN AT THE PUNISHMENT STAGE OF THIS TRIAL

During the punishment hearing, and over objection, Grigson was called to testify by the State. He was the only psychiatrist who testified at the punishment hearing. Grigson first testified to having what we suspect was to the jury extremely impressive credentials. He did not fail to inform the jury of his past accomplishments in the field of psychiatry, as a teacher and consultant. He further informed the jury that he had given testimony "as an expert in the field of psychiatry in courts of this State . . . pretty much all over the state." He also told the jury that he had examined "about 9500 [persons who] were charged with felony-type offenses, and several hundred charged with misdemeanor-type offenses." As to his examination of appellant, Grigson informed the jury it took only one hour and 20 minutes for him to examine appellant and make the determination that appellant was an incurable and untreatable sociopath, because of his high degree anti-social personality.

In fairness to Grigson, however, we must point out that at the time of the psychiatric interview, Grigson had in his possession "The Wichita Falls Police records. I had Pen Packets that were available, I had other psychiatric examinations which had been performed at Rusk State Hospital, tests that had been given to him at Rusk State Hospital." [3]

Grigson also testified that from his examination of appellant he was able to conclude appellant had "what is called an anti-social

---

**3.** The record reflects that appellant had been previously adjudged by a jury not to be competent to stand trial.

personality disorder." Grigson testified that such a person is more commonly referred to as a "sociopath," who in his opinion is incurable and untreatable because a sociopath does not suffer from an illness or a sickness. Persons who suffer from a sociopathic personality range in degrees. Using the example of a scale, 1 to 10, with 1 being the lowest degree, Grigson testified that appellant "would be at the very end of it. If you could go higher than ten, he'd be higher, but certainly, at the very end of the table." Grigson gave a very descriptive and graphic account of how a person with a high degree anti-social sociopathic personality performs and reacts to his fellow man: he does not have a conscience, repeatedly breaks the rules, concerns himself only with self-pleasure and self-gratification, manipulates and cons others in order to satisfy his own personal interests, is never remorseful, and does not have any feelings of guilt or shame or embarrassment after having done something wrong or unlawful.

## VI. THE STATE'S RESPONSE TO APPELLANT'S CLAIM THAT HIS SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED

The State's argument, that appellant's Sixth Amendment right to counsel was not violated, is premised on its assertion that *Estelle v. Smith* restricts itself to the situation where the examination "encompasses future dangerousness," and the examiner literally uses in his testimony at the punishment hearing the words "future dangerousness." The State argues that because Grigson did not in his testimony literally use the phrase "future dangerousness," and did not in his testimony expressly give an opinion, "as to Appellant's 'future dangerousness,'" or on the issue of "probability," *Smith* is not applicable to this cause. As a back-up argument, the State argues that because: (1) Grigson had previously examined appellant in 1972, (2) appellant had previously injected the issues of competency and sanity into the case, and (3) counsel knew there was going to be an examination by someone on June 6, 1980, then, "Clearly, Appellant's counsel had sufficient notice to discuss with Appellant whether he should participate in any psychiatric examination by any expert chosen by the State. Thus, distinguished from *Estelle v. Smith,* supra, Appellant had "the guiding hand of counsel.'"

Although we agree with the State that Grigson did not in his testimony literally use the phrase "future dangerousness," and did not in his testimony literally predict appellant's "future dangerousness," nevertheless, in light of the testimony Grigson did give, we do not find such argument very convincing. In fact, we must ask: for what other reason or purpose was Grigson called to testify if it was not to get a certain message across to the jury? After having read Grigson's entire testimony, and digested same, we are able to state that we believe his pertinent testimony more than equated the meaning of the phrase, "future dangerousness," and are confident that the jury got Grigson's message that appellant, a high degree incurable and untreatable sociopath, would in the future commit criminal acts of violence. If Grigson's testimony is accepted, we believe that it would be of immense benefit to a juror in answering the probability question. See Art. 37.071(b)(2), supra. However, it matters not what we believe was the effect of Grigson's testimony on the jury because we have concluded that the State either reads *Estelle v. Smith* too restrictively, or misreads *Smith* altogether.

What the State has overlooked in its reading of *Smith* is the fact that the opinion, not once but several times, places great emphasis upon the fact that the defendant Smith's attorneys had not been given notice that the psychiatric examination by Grigson would encompass the issue of the defendant's future dangerousness, and to what end Grigson's findings could be employed. The opinion does not concern itself with the details of a psychiatric examination, or what may have occurred in the past regarding an examination of a defendant, but, instead, seriously concerns itself with the giving and receipt of notice by counsel of what findings will evolve, flow or result from a pretrial psychiatric examination,

and to what end those findings could be employed by the examiner at the defendant's trial. We believe that the Court's primary holding is that it is only after sufficient notice is given and received by counsel that counsel might then be able to give his client "the guiding hand of counsel."

We reject the State's assertion that "Appellant's counsel had sufficient notice to discuss with Appellant whether he should participate in any psychiatric examination by any expert chosen by the State." It is true that appellant's counsel was, as a matter of law, put on notice that the examination would encompass the issues of competency to stand trial and sanity at the time of the commission of the offense, see Art. 46.02, Sec. 3(a), V.A.C.C.P.; Art. 46.03, Sec. 3(a), V.A.C.C.P., and an end result of such examination would be that findings as to those issues would occur. But, beyond that, appellant's counsel was not put on notice that the examination by Grigson would encompass the issue of whether appellant had a high degree anti-social personality, and was a sociopath, and to what end Grigson's findings could be employed during the course of appellant's trial. And we believe that is what *Estelle v. Smith* requires; that counsel should have been given notice of those things. Without such notice, we believe that "the guiding hand of counsel" was rather limp and ineffective, rather than firm and directive, as it is supposed to be when it comes to an attorney defending a person accused of committing a criminal wrong.

## VII. OUR CONCLUSION

The trial court should not have permitted Grigson to testify over objection to the findings he had made regarding appellant's personality. Appellant's trial counsel had not been given notice that the pretrial psychiatric examination would encompass the issue of appellant's personality. Thus, appellant was denied the assistance of counsel in making the significant decision of whether to submit to the examination and to what end Grigson's findings could be em-

ployed during the trial. *Estelle v. Smith, supra*. Appellant's conviction must be reversed. See and compare *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

The judgment of the trial court is reversed, and the cause remanded.

McCORMICK and CAMPBELL, JJ., dissent.

W.C. DAVIS, J., not participating.