Noble D. MAYS, Appellant,

v.

The STATE of Texas, Appellee.

No. 69287.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 3, 1986.

Greg Merkle, Douglas L. Baker, Wichita Falls, for appellant.

Barry L. Macha, Dist. Atty., Wichita Falls, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code Sec. 19.03(a)(2). Trial was transferred on a change of venue from the 158th District Court of Denton County, to the 46th District Court of Wilbarger County.[1] After finding appellant guilty, the jury answered yes to the special issues under Art. 37.-071(b), V.A.C.C.P. Punishment was assessed at death.

In two grounds of error appellant challenges the sufficiency of the evidence to support the conviction.

James Thomas Moore testified that he and appellant discussed stealing an automobile in order to go to Dallas and get money. Moore told appellant he knew someone who owned a white Lincoln Continental and who frequented Lucy Park in Wichita Falls.

On the date of the murder, Moore and appellant were playing basketball in Lucy Park waiting for the owner of the automobile to arrive. A white Lincoln Continental with four people inside drove through the park. The car returned ten or fifteen minutes later, and a friend of Moore's, named Roy, got out. Moore and appellant went to talk to Roy, and the white Lincoln left. Thirty or forty minutes later, the car returned, with only the driver inside.

Moore testified that the driver of the white Lincoln motioned for him to come over to the car, and asked him if he wanted to sit in the passenger side. After Moore got in, the driver asked Moore if he wanted to go riding around with him. Moore asked him if appellant could go also. After some hesitation, the driver said it was all right. Moore got out of the car and told appellant that the driver looked like a good prospect to steal a car from. Appellant told Moore to ask the driver if he would take them to check on his wife's stalled car. Appellant and Moore returned to the car. Appellant sat in the back seat, behind the driver, and Moore sat in the front seat. While driving around, Moore asked the driver to go check on appellant's wife's car, and the driver agreed.

The two men directed the driver to a remote spot on Anchor Road. According to Moore, appellant took out a knife, placed it to the driver's chest, and told him to pull over to the side of the road. Appellant then told the driver to give his money, jewelry, keys, and wallet to Moore. The victim complied and then got out of the car and started running down the road. Moore caught the victim about thirty-five yards away from the car. Appellant caught up with them, and started hitting the victim. The victim fell in a ditch. Appellant

---

1. This cause was originally transferred from Wichita County to Denton County on change of venue. Trial was had in Denton County, and this Court reversed the resulting conviction for

*Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1980) error. *Mays v. State,* 653 S.W.2d 30 (1981).

stabbed him twice in the back and once in the chest with a knife. Moore and appellant left. The victim died from his wounds.

Omitting the formal parts, the indictment charged that appellant *and Moore* did:

"intentionally cause the death of an individual, J___ L___, by stabbing him with a knife and the said Noble D. Mays, Jr. and James Thomas Moore did then and there intentionally cause the death of the said J___ L___, in the course of committing and attempting to commit the offense of robbery, to wit: Noble D. Mays, Jr. and James Thomas Moore did then and there while in the course of committing theft and with intent to obtain property of J___ L___, to wit: lawful United States currency, without the effective consent of the said J___ L___ and with intent to deprive the said J___ L___ of said property, did then and there intentionally and knowingly cause bodily injury to the said J___ L___ by stabbing him with a knife against the peace and dignity of the State."

The record reflects that the trial court instructed the jury as follows:

"If you find from the evidence beyond a reasonable doubt that on or about the 7th day of April, 1979, in Wichita County, Texas, the defendant, Noble D. Mays, Jr., and James Thomas Moore did intentionally cause the death of J___ L___ while in the course of committing or attempting to commit the offense of robbery, to-wit: lawful United States currency, without the effective consent of the said J___ L___ and with intent to deprive the said J___ L___ of said property, did intentionally or knowingly cause bodily injury to the said J___ L___ by stabbing him with a knife, then you will find the Defendant guilty of capital murder."

Appellant contends in ground of error nineteen that because there was no evidence that Moore intentionally caused the death of the victim by stabbing him with a knife—as alleged in the indictment and required by the court's instruction to be proved—then the evidence is insufficient to support the conviction.

Appellant concedes that the trial court did not instruct the jury that appellant's culpability for the murder could be proved through the law of parties. The caption on the charge lists only the name of appellant, and the opening paragraph recites that "The defendant, Noble D. Mays, is charged with the offense of capital murder, alleged to have been committed ..." All other portions of the charge simply refer to the accused as the "defendant," including the court's charge on the necessity to corroborate the testimony of the accomplice witness James Thomas Moore. The State did not rely on any act of Moore's to prove that appellant killed the deceased by stabbing him with a knife. The charge states that James Thomas Moore is an accomplice witness. No element of the murder case against appellant required proof of the same element against Moore. To that extent, the indictment's murder allegations against Moore are surplusage with respect to appellant.

"The distinction between unnecessary matter that must be proven, and that which is surplusage requiring no proof, is this: When the unnecessary matter in the charging instrument describes an essential element of the offense, the unnecessary matter must be proven at trial. Where it does not describe an essential element, it need not be proven."

*Upchurch v. State*, 703 S.W.2d 638, 640 (Tex.Cr.App.1985).

■ In the instant case, the indictment alleged all the elements of *appellant's* conduct that constituted murder, i.e., that he intentionally caused the death of an individual by stabbing him with a knife. The surplus matter in the indictment having to do with Moore's stabbing the victim does not describe or explain this conduct of appellant's. As to appellant, therefore, the matter in the indictment regarding Moore's stabbing the victim was surplusage, proof of which was unnecessary to support the conviction. If that matter had been excised from the indictment, the allegations regarding *appellant's* culpable conduct would have remained unchanged. As in *Upchurch*, supra, "The conduct comprising

the offense would have remained exactly the same regardless of the truth or falsity of the unnecessary matter in the indictment ..." *Id.* at 641. We hold therefore that the matter in the indictment regarding Moore's stabbing of the victim was surplusage with respect to appellant. Proof of that surplusage was not needed to support the conviction. Ground of error nineteen is overruled.

■ Appellant contends that the evidence is insufficient to support the conviction because the accomplice's testimony was not corroborated. Although the indictment alleges the taking of "lawful United States currency" only, Moore testified that he and appellant took the deceased's jewelry, money, wallet, and car. Appellant claims that Moore's testimony was the only evidence of the taking of "lawful United States currency", and that Moore's testimony on this point was therefore uncorroborated. Appellant concludes that the evidence is, for this reason, insufficient to support the verdict.

Article 38.14, V.A.C.C.P. provides as follows:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

Appellant admitted in his written confession introduced at trial that he killed the deceased. Moreover, two witnesses testified that appellant admitted to them that he had killed the deceased in the course of a robbery. We find that other evidence tending to connect appellant with the offense adequately corroborated the accomplice's testimony. *Thompson v. State,* 691 S.W.2d 627 (Tex.Cr.App.1984); see also *Killough v. State,* 718 S.W.2d 708 (Tex.Cr.App.1986) and *Brown v. State,* 672 S.W.2d 487 (Tex.Cr.App.1984). Ground of error number twenty is overruled.

Appellant argues in his first ground of error that the entire indictment had been dismissed prior to trial. The record reflects that on July 27, 1979, appellant and James Thomas Moore were charged in a two-count indictment with the offenses of capital murder and murder, respectively.[2]

Before appellant's trial, Moore entered a plea of guilty to the offense of murder as alleged in Count Two of the indictment. The State then filed a motion to dismiss the first paragraph of the indictment. The caption of this motion reads "THE STATE OF TEXAS VS. JAMES THOMAS MOORE." The motion reads as follows: "Comes Now the State of Texas by and through her Attorney and *requests leave of the Court to dismiss the first paragraph of the indictment in this cause."* (Emphasis added.) The trial court granted the motion. The State also filed a motion to dismiss the second count of the indictment. The caption of this motion reads "THE STATE OF TEXAS V. NOBLE D. MAYS, JR." The wording of the motion requests "the court to dismiss the second count in the above entitled and numbered criminal action in which defendant is charged with the offense of murder...." The trial court granted the motion.

Appellant argues that, because both motions had been granted, no indictment remained on which to try him. Appellant reasons that because the first motion to dismiss was not specific and contains only general language as to whether or not it included him as well as Moore, then the dismissal applied equally to both appellant and Moore. Appellant points out that the first motion was filed in Cause No. 18,557–C, the same cause of action that was transferred on change of venue. Nor is there any indication in the record of a severance. Therefore, appellant concludes, the granting of the first motion dismissed the capital murder charge against him, and the granting of the second dismissed the murder charge. Thus, there remained no indictment on which to try appellant.

■ The first motion to dismiss bears both the indictment number and the caption

---

2. The first count was quoted above; the second count alleges that appellant and Moore did in-

tentionally and knowingly cause the death of the victim by stabbing him with a knife.

"STATE OF TEXAS V. JAMES THOMAS MOORE." While reference to the indictment by number alone would leave the scope of the State's motion uncertain, naming the defendant makes clear that the State's motion to dismiss was directed to the case against Moore only, and makes it equally clear that the trial court dismissed the case against Moore, not against appellant. There is nothing in the order of dismissal, the docket sheet, or anywhere in the record that the trial court intended to dismiss the capital murder charge against appellant. See Art. 32.02, V.A.C.C.P. The first ground of error is overruled.

In grounds of error two and three, appellant argues that the trial court erred in failing to suppress appellant's confession and other evidence obtained as a result of an illegal arrest. Appellant contends that the arrest violated the Fourth Amendment in that it was not based upon probable cause.

Dallas Police Officer J.W. McClendon testified at the hearing on the motion to suppress. At about 9:45 a.m. on April 13, 1979, he received a radio call of a burglary in progress at apartment 225 at 2530 Community Drive. "Approximately two minutes" later, McClendon arrived at the address, alone. As McClendon walked to the apartment, he saw a man standing in front of the door of apartment 225, and another man sitting on the steps leading up to the apartment. Officer McClendon asked the man on the steps if he was with the man at the door. He said that he was. At that point the officer "told them both to come down where I was." As the men walked down the stairs toward him, McClendon told them that he was on a call, told them both to turn around, and told them that he "needed to frisk them to make sure they didn't have any weapons on them." McClendon frisked the two and handcuffed them. McClendon testified that he felt he needed to handcuff the men for his protection, "[d]ue to the nature of the call and the way they were acting scared like maybe they had been caught at something, and I was all alone, and two of them, and they was both bigger than I was."

Officer McClendon asked the men their names. Appellant gave the name Chance Noble, and the other man gave the name J.T. Moore. At that point, a woman opened the door of apartment 225, and at about the same time, a second police officer arrived. McClendon had the second officer watch the two men while McClendon went to the apartment to talk to the woman.

The woman identified herself to McClendon as Charlotte Locashio. She told McClendon that she had called the police because "[appellant] was banging on her door, wanting in, and that she was frightened of this individual, that he was a very dangerous and mean person, and that she just did not want him in her apartment. She would not answer the door and he would not go away and he was making threats, hollering at her that if she didn't open the door, he was going to blow her car up." Locashio told McClendon that she knew one of the men by the name of Noble Mays, and the other by the nickname of Buddy. Locashio told McClendon that the men had arrived in a white Lincoln town car, that they had been driving it about a week, and that Noble Mays had told her he had bought the car for $15,000.00.

McClendon went back downstairs and asked the two men for identification. Appellant showed McClendon a driver's license bearing the name Noble D. Mays, Jr. The officers then escorted the two men to one of the patrol cars about thirty feet away and radioed for a warrant check on the two. McClendon asked appellant which car they had arrived in. Appellant stated that he had not driven a car to the apartment complex. McClendon pointed to the white Lincoln Town car parked in the parking lot of the apartment complex and asked if they had arrived in it. Appellant replied he had not.

McClendon asked if he could see the car keys in appellant's pocket. Appellant gave the keys to the second officer. McClendon asked if the keys would fit the Lincoln. Appellant said that "yeah, one of the keys would fit the car. And then he added, 'Well, what would you do if you found a car sitting beside the road, you would take

it, wouldn't you?'" At that point Officer McClendon stopped appellant from talking and read him the *Miranda* [3] warnings. After McClendon read him the warnings and appellant stated that he understood his rights, McClendon asked appellant "Where did you get the car?" McClendon testified that "After Mr. Mays admitted to stealing the car, I then told him that he was under arrest...."

McClendon testified that he had talked to Locashio for about five minutes, and that it took about ten minutes from the time he talked to Locashio to the time he arrested appellant for theft. The car was impounded, and was later determined to have belonged to the deceased.

■ These facts clearly demonstrate reasonable suspicion rapidly escalating to probable cause to arrest. Arriving at the address where a burglary had been reported in progress, Officer McClendon reasonably believed that the two men found at that address might be involved in the offense. He was justified in briefly detaining them. "A police officer may briefly stop a suspicious individual in order to determine his identity or to maintain his status quo momentarily while obtaining more information." *Gearing v. State*, 685 S.W.2d 326, 327–28 (Tex.Cr.App.1985); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Cr.App.1983).

■ The officer's further detention and frisking of appellant and his companion was due to a reasonable concern for his own safety, when the lone officer was confronting two men, both larger than he, and suspected of burglary. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court elaborated: "Although not expressly authorized in *Terry*, *United States v. Brignoni-Ponce*, 422 U.S. 873, 881–882, 95 S.Ct. 2574, 2580–2581, 45 L.Ed.2d 607 (1975), was unequivocal in saying that reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop." 103 S.Ct. at 1324.

■ The continuation of the temporary seizure in the instant case was justified after McClendon next spoke to the citizen who had reported the burglary in progress. She identified appellant by a name other than the one he had given the officer, and also stated that he had arrived in the Lincoln town car. The officer continued to detain appellant to question him further about the discrepancy in names. This inquiry proved the citizen's information about appellant's name to be accurate. Appellant's denial of any connection with the Lincoln justified a continued detention to probe that additional discrepancy.

■ Furthermore, Locashio, who had reported a burglary in progress, identified appellant as the man who had been attempting to break into her home, and added that he had threatened her and that she feared him because he was dangerous. This information justified continued detention of appellant. *Harris v. State*, 656 S.W.2d 481 (Tex.Cr.App.1983). In *Harris*, supra, an officer responded to a call reporting two burglaries. He detained the defendant at the scene and two witnesses thereupon identified the defendant as the intruder they had seen. "While not yet reaching a 'hard certainty,' [the officer's] knowledge undoubtedly rose to the level of probable cause to arrest." *Id.* at 485. In the instant case the officer had even more basis for believing that appellant had committed a crime, when the citizen informed him that appellant had arrived in the white Lincoln town car and upon further questioning appellant admitted having stolen the car. This admission supplied the officer with probable cause to arrest. The detention prior to the arrest, which lasted no more than ten minutes according to the officer's testimony, was justified under the circumstances. *Harris*, supra; see also *Casarez v. State*, 504 S.W.2d 847, 849 (Tex. Cr.App.1974). Appellant's second and third grounds of error are overruled.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant contends as his fourth ground of error that the trial court erred in failing to suppress his confession for the reason that appellant had asserted his right to counsel, and had never waived the right before he gave his confession to the police.

A hearing was held on appellant's motion to suppress his confession, based on the claim he now brings before this Court. At the end of the hearing the trial court overruled the motion. Subsequently, at appellant's trial, a Jackson v. Denno[4] hearing was held before the State introduced appellant's confession into evidence. The trial court again overruled appellant's motion and admitted the confession. The records from both the suppression hearing and the *Jackson v. Denno* hearing are before us and reflect the following:

Following his arrest appellant was brought to the homicide division of the Dallas Police Department. Detective Sergeant Rose met with appellant and contacted Officer Johnson, an investigator for the department. According to Johnson, he read appellant his *Miranda* rights, which appellant acknowledged that he understood. Johnson testified at the hearing on the motion to suppress as follows:

"Q: After you gave the warnings and he said that he understood them, what occurred next?

"A: I asked him if he wanted to tell me about what—the situation here in Wichita Falls.

" . . .

"Q: Well, what did the Defendant say?

"A: He stated that he wanted to talk to an attorney first.

"Q: What did you do when he stated that?

"A: I told him that would be fine with me.

"Q: What occurred next?

"A: I took him out of the interrogation room out into the homicide area and he used a phone directory for a phone number and called an attorney.

" . . .

"Q: Prior to the first call, did he tell you who he was going to call?

"A: He wanted to know if I knew Randy Taylor's phone number and I told him I did not.

"Q: Who is Randy Taylor?

"A: He is an attorney in Dallas.

" . . .

"Q: How many times did he use the phone?

"A: Three times.

" . . .

"Q: After he made the first call, what did he do, if anything?

"A: He stated he couldn't contact Randy at what ever number he had, that he had to make another call, and I told him to go ahead.

" . . .

"Q: Well, what happened after the second phone call?

"A: After he finished the second phone call he wanted to know if it would be all right if he made a long distance phone call to his wife.

"Q: Did you allow him to do that?

"A: I did.

" . . .

"Q: What occurred after he finished the third phone call?

"A: After he finished the third phone call he said he was ready to talk to me.

"Q: Did he say that out in the office or did he go back into the interview room?

"A: Well, when he hung the telephone up he turned around and walked to me and said that he was ready. He said, 'I'm ready.'

" . . .

"Q: When you got back in the room what did he say?

"A: He told me that he would tell me about the situation here in Wichita Falls if I would put it down exactly the way he told me.

" . . .

4. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

"Q: Tell the Court exactly how the Defendant began telling you whatever story he told you?

"A: After we sat down he told me again that he had talked to Randy Taylor, like he told me he wanted to, and he said, 'I told you I would tell you about it if you would let me talk to him.' And he just started telling me, running down the situation here."

Appellant then confessed to the murder. Officer Johnson reduced the confession to writing, again gave appellant the statutory warnings, and appellant signed the written confession.

At the *Jackson v. Denno* hearing, appellant gave a different account of the interrogation. He testified that, upon questioning from Johnson about a murder in Wichita Falls, he responded that he knew nothing about it. Appellant also testified that he was never given his *Miranda* warnings, and, upon requesting to speak with an attorney, Johnson said, "Well, there's not any lawyers in here." Afterwards, appellant testified, Johnson continued interrogating him about the murder. According to appellant, he was only allowed to leave the room to make a phone call once he signed a confession four or five hours later. At the conclusion of the *Jackson v. Denno* hearing, the trial court ruled that the confession had been freely and voluntarily given, and admitted it into evidence.

At a hearing on the admissibility of a confession, the trial court is the trier of the facts and judge of the credibility of the witnesses and the weight to be given to the testimony. The court may accept or reject the testimony of the witnesses, including the defendant, in deciding the issues. *Kelly v. State*, 621 S.W.2d 176, 179 (Tex.Cr. App.1981).

If a suspect indicates in any manner that he wishes to consult with an attorney before speaking with an officer, there can be no further questioning of the suspect. *Miranda v. Arizona*, supra, 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 707. The suspect may waive the right, and "a heavy burden rests on the govern-

ment to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.*, 384 U.S. at 475, 86 S.Ct. 1628, 16 L.Ed.2d at 724. See also *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405, 412 (1983).

A reviewing court cannot presume waiver of the right. A waiver may be found in an express written or oral statement or, in at least some cases, may be inferred from the actions and words of the person interrogated. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (1979) (footnote omitted). When an accused has expressed his desire to deal with the police only through counsel, he is not subject to further interrogation until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981). An accused initiates a conversation under *Edwards*, supra, only by remarks which can be fairly said to represent a desire to open up a more generalized discussion relating directly or indirectly to the investigation. *Oregon v. Bradshaw*, supra.

The record reflects that appellant invoked his right to counsel when he "stated that he wanted to talk to an attorney first." The record supports the conclusion that, after a telephone conversation with an attorney, appellant initiated a further exchange with Officer Johnson, which led to appellant's confession of guilt.

"But even if a conversation taking place after the accused had 'expressed his desire to deal with the police only through counsel,' is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Oregon v. Bradshaw*, supra.

Johnson testified that he had given appellant the *Miranda* warnings before ap-

pellant made his phone calls, and appellant stated that he understood those rights. Appellant stated that he wanted to talk to an attorney *first.* After appellant had made his phone calls, he told the officer "I'm ready." Appellant then told the officer, "I told you I would tell you about it if you would let me talk to [the attorney, Randy Taylor]," and that he had talked to Randy Taylor. We find that appellant's statement after he initiated the further exchange with Officer Johnson show a waiver of the right to have an attorney present during the subsequent interrogation. Appellant's fourth ground of error is overruled.

In his fifth ground of error, appellant contends that the trial court erred in permitting the shuffles of jury panels one through three to be conducted in the district clerk's office, while the veniremen were seated in the courtroom.

Appellant cites *Latham v. State,* 656 S.W.2d 478 (Tex.Cr.App.1983), where the trial court erred by denying the defendants' timely objection to shuffle the jury panel. Citing *Stark v. State,* 657 S.W.2d 115 (Tex.Cr.App.1983), this Court stated that Article 35.11, V.A.C.C.P.[5] " 'contemplates that court business will be conducted in the courtroom.' "

We find that allowing the shuffle to be carried out in the district clerk's office while the panel was seated in the courtroom was not error. Under our interpretation of the statute, once he has had an opportunity to observe the jury panel, Article 35.11, supra, grants the defendant an absolute right to have the panel shuffled upon his timely motion. See, *Wilkerson v. State,* 681 S.W.2d 29, 30 (Tex.Cr.App.1984); *Yanez v. State,* 677 S.W.2d 62, 68–69 (Tex. Cr.App.1984); *Smith v. State,* 648 S.W.2d 695, 696 (Tex.Cr.App.1983); see also *Hall*

*v. State,* 661 S.W.2d 113, 116 (Tex.Cr.App. 1983).

Although this Court has indicated that it is the better practice to conduct the shuffle in the courtroom, it is not a requirement of Art. 35.11, supra. The record reflects that appellant was able to observe the panels as they were seated in the courtroom, cf. Stark, supra, and was subsequently allowed a shuffle of those panels. We find that Article 35.11 was satisfied in the instant case. Ground of error five is overruled.

Appellant contends in ground of error number six that the trial court erred in prohibiting him from discussing probation with the panel during voir dire. Appellant contends that the trial court's refusal to permit questions concerning probation was an abuse of its discretion.

There is no provision for probation of punishment upon conviction of capital murder. Art. 42.12, Sec. 3g(a)(1)(A). The record does not reflect that appellant made a sworn motion requesting the jury to recommend probation, as required by Art. 42.-12, Sec. 3a(a). Probation could not have been an issue for the jury in the instant case, even assuming that a verdict of guilty for a lesser included offense. The trial court did not abuse its discretion by refusing to permit questions to the panel about probation. See *King v. State,* 631 S.W.2d 486 (Tex.Cr.App.1982). The sixth ground of error is overruled.

Appellant contends in ground of error number seven that the trial court erred in granting the State's challenge for cause against veniremen Judy Fortune and Barbara Lovelace because of their views on capital punishment, in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), which denied him "an impartial jury under the Sixth and

---

5. Article 35.11. V.A.C.C.P. states:

"The trial judge, upon the demand of the defendant or his attorney, or of the State's counsel, shall cause the names of all the members of the general panel drawn or assigned as jurors in such case to be placed in a receptacle and well-shaken, and the clerk shall draw therefrom the names of a sufficient number of jurors from which a jury may be selected to try such case, and such names shall be written, in the order drawn, on the jury list from which the jury is to be selected to try such case, and write the names as drawn upon two slips of paper and deliver one slip to the State's counsel and the other to the defendant or his attorney."

Fourteenth Amendments to the United States Constitution, and Article 1, Sections 15 and 19 of the Texas Constitution." The foregoing constitutes the entire argument advanced by appellant under this ground of error without reference to any answer by Fortune or Lovelace given during voir dire examination. We have nevertheless reviewed the voir dire of both prospective jurors.

Fortune stated that she could not "under any circumstances" vote to give the death penalty and that she could not consider answering the questions where the answer would result in the death penalty. The only time she deviated from this position was when she stated "unless I saw the crime with my own eyes and there, I think I could." Lovelace stated she was opposed to the death penalty: "the Bible says you are not supposed to kill, and I feel very strongly about it. I think we need to change our laws. I feel very definite about it." She answered yes to a question about whether she would automatically vote against the death penalty "without regard to any evidence [she] might have heard." Lovelace could not "consider assessing the death penalty." She at no time vacillated from this position.

■ We find that the trial court was not in error in sustaining the challenges for cause since the veniremen's views on capital punishment would prevent or substantially impair their performance as jurors in accordance with their instructions and oath. See Art. 35.16(b)(3), V.A.C.C.P.; *White v. State*, 629 S.W.2d 701 (Tex.Cr.App.1981). See also *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Granviel v. State*, 723 S.W.2d 141 (Tex.Cr.App.1986); *Banks v. State*, 643 S.W.2d 129 (Tex.Cr. App.1982). The seventh ground of error is overruled.

Appellant contends in ground of error eight that the trial court erred in prohibiting appellant from questioning prospective juror Peggy Lowke regarding her medical and psychiatric history to see "if they would affect her ability to deliberate and her deliberations on guilt/innocence and punishment phases of the trial."

The record reflects that the prospective juror was questioned at length by the trial judge, the prosecutor, and defense counsel. During defense counsel's questioning, the venireman stated that she had been receiving treatment from a psychiatrist. She further stated that she was "at a feeling good point now," and felt "strong." Appellant moved to question her further concerning her psychiatric treatment, and how it might affect her deliberations. The following exchange then took place:

"THE COURT: What was the area that you wanted to go into that you hadn't already been through?

"MR MERKLE [defense counsel]: Your Honor, with this particular witness and her testimony about inability to make decisions and how pressures affect her, I think it's very crucial to go into the area of the individual verdict with this particular witness.

THE COURT: I can understand your point of view, but the Court's point of view is that she's been on the stand for two hours and she was questioned by me when she first took the stand, in response to your request, if there is anything that bothers her or prevents her from being able to serve, and she said no. And so that satisfied me, and as to further go into a private matter as a juror, like this, after she has already answered the question, I don't think is proper. So I overrule your motion for further testimony, for further questioning."

■ The trial court possesses wide discretion over the course of the voir dire examination of a prospective juror, *Smith v. State*, 683 S.W.2d 393, 401 (Tex.Cr.App. 1984), and reversal will result only for an abuse of discretion. *Ussery v. State*, 651 S.W.2d 767, 772 (Tex.Cr.App.1983). The trial court, in its discretion, may prevent the asking of repetitious questions. The prospective juror had twice stated that she felt well enough to serve during the trial. There was no abuse of the trial court's discretion by not allowing appellant's attor-

neys to question her further. We overrule appellant's ground of error eight.

In his ground of error number nine, appellant urges that the trial court erred in refusing to permit appellant's counsel to inquire of two veniremen's views regarding homosexuality.

The following constitutes appellant's entire "argument and authority" under this ground of error:

"The right to be represented by counsel guaranteed by Article 1, Section 10 of the Texas Constitution, encompasses the right of counsel to question members of the jury panel in order to intelligently exercise his peremptory challenges. *Clark v. State*, 608 S.W.2d 667 (1980). "The Trial Court prohibited Appellant from inquiring regarding prospective jurors views on homosexuality. [citations to the record omitted]."

The only reference to homosexuality came in appellant's confession. In this confession, appellant referred to the deceased and others in Lucy Park as "queer." Although homosexuality was raised in appellant's unedited confession, the reference to "queer" was deleted, along with other portions of the confession, before the offer and admission of the confession. Appellant objected to this and other deletions but never offered the excluded portions of the confession into evidence. Other portions of the confession were excluded at appellant's request.

In *Clark v. State*, cited by appellant, reversal resulted where counsel for the defendant was denied the right to question a venireman regarding "a formal conclusion about the guilt or innocence of a defendant that would influence a juror's verdict." This Court conceded that the defendant had been deprived "of a valuable right to intelligently exercise his peremptory challenges." In *Mathis v. State*, 576 S.W.2d 835 (Tex.Cr.App.1979) reversal resulted where defendant was denied the right to question a venireman about his feelings toward recommending probation as a form of punishment where probation was within the range of punishment in the case. In the recent case of *Robison v. State*, 720 S.W.2d 808 (Tex.Cr.App.1986) (State's motion for rehearing denied) reversal resulted where the defendant was denied the right to ask a venireman about a bias or prejudice against a defendant who raises the issue of insanity. In *Robison*, the defense of insanity was relied on by the defendant. In all of the foregoing case where reversal resulted, the area of inquiry on voir dire related to an issue to be decided by the jury. In the instant case homosexuality was not in evidence and clearly had no bearing on any issue to be decided by the jury. Appellant has not been harmed by the trial court's action and we reject appellant's ground of error.

Appellant argues in ground of error ten that the trial court erred in overruling his challenge for cause of prospective juror Robert Long because the juror "would allow his thoughts regarding pardon and parole to influence his deliberations at the punishment phase of the trial."

Under examination by defense counsel the venireman stated in making up his mind at punishment the possibility of pardon and parole "would definitely influence my opinion—I think that would influence my answer so that I would recommend the death penalty." Under questioning by the prosecutor the venireman was reminded that "the court will instruct the jury that the possibility of pardon and parole is not to enter into your deliberations when it comes to either finding guilt or innocence or when it comes to setting the punishment." In reply to the question as to whether he could "set those feelings aside and not let them influence you in any way", the venireman responded, "I believe I could put those feelings aside and look at the case objectively." Under further questioning by defense counsel as to whether those feelings would affect his deliberations, the venireman again stated he believed he could put those feelings aside and look at the case objectively.

Appellant challenged the prospective juror for three reasons, one being that "he would consider pardon and hope of parole and hope of pardon in his deliberations on either guilt or innocence or punishment and

could not disregard such." The court overruled the challenge.

■ Appellant bases his argument on Article 35.16(c)(2), V.A.C.C.P., and argues that the fact that the juror stated that he would allow his feelings on pardon and parole to influence his deliberations rendered him subject to challenge for cause. On the other hand, the venireman under questioning by both the prosecutor and appellant stated his belief that he would be able to set aside those feelings toward the possibility of parole or pardon and look at the case objectively.

Where the prospective juror states he believes that he can set aside any influences he may have and the trial court overrules the challenge for cause, the court's decision will be reviewed in light of all the answers the prospective juror gives. *Anderson v. State*, 633 S.W.2d 851 (Tex.Cr. App.1982). We conclude that the trial court did not abuse its discretion in overruling the challenge for cause. The tenth ground of error is overruled.

Appellant urges in ground of error eleven that the trial court erred in excusing several veniremen for the reason of economic hardship.

■ The record reflects that both appellant and the State were present during the time that these veniremen were excused. No objections to their excusal were made. See Tex.Govt.Code Ann. sec. 62.110 (formerly Tex.Rev.Civ.Stat.Ann. art. 2120 (as amended by Acts. 1971, 62nd Leg., p. 2801, ch. 905, sec. 10)). Error, if any, was waived. *Burns v. State*, 556 S.W.2d 270, 278 (Tex.Cr.App.1977), *cert. denied*, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977). Ground of error eleven is overruled.

In ground of error twelve appellant contends that the trial court erred in allowing a witness to answer a hypothetical question regarding whether there was a probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society because said evidence was irrelevant.

The record reflects that the State called Dr. Clay Griffith, a psychiatrist, to testify during the punishment phase of the trial. The State proposed a hypothetical fact situation based upon the evidence that had been admitted. The State asked Dr. Griffith if, based upon the hypothetical, he believed that the individual described in the hypothetical would probably continue to commit criminal acts of violence in the future. Dr. Griffith testified that in his opinion the individual described in the hypothetical would do so.

Appellant argues that this testimony was irrelevant in that Dr. Griffith had never seen appellant prior to trial, never examined him professionally, never viewed any examination reports of anyone who may have examined appellant, and had no personal knowledge of the case on trial. This argument has previously been rejected by this Court. See *Barefoot v. State*, 596 S.W.2d 875, 887–88 (Tex.Cr.App.1980), *cert. denied*, 353 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981). Furthermore, this Court has previously held this type of testimony relevant. See *Moore v. State*, 542 S.W.2d 664, 675–76 (Tex.Cr.App.1976), *cert. denied*, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977).

■ Appellant relies upon this Courts decision in *Holloway v. State*, 613 S.W.2d 497 (Tex.Cr.App.1981). This Court in *Holloway* reversed a conviction for capital murder because the trial court allowed to be introduced a psychiatrist's testimony regarding future dangerousness when the psychiatrist based his opinion only upon interviews with the co-defendant and her mother, a victim of one of the robberies which preceded the capital murder, and the arresting and interrogating officers. See 613 S.W.2d at 503, n. 17. This Court reversed, holding

"that while a duly qualified expert witness may give his opinion based upon sufficient relevant facts, those facts must be either within his personal knowledge, or assumed from common or judicial knowledge, *or established by evidence [.]*"

613 S.W.2d at 503 (emphasis added). In the case at bar, the hypothetical was made from facts in evidence. Therefore, *Holloway* does not apply. Ground of error twelve is overruled.

Appellant contends in ground of error thirteen that the trial court erred in not granting his challenge for cause of venireman Linda Hawkins for the reason that she could not consider the minimum range of punishment for murder.

■ Appellant argues that he was entitled to challenge for cause this prospective juror because she expressed "a bias or prejudice against any of the law applicable to the case upon which the defense [was] entitled to rely," as proscribed by Art. 35.16(c)(2), V.A.C.C.P.[6] The record reflects that this prospective juror unequivocally stated several times that she could consider the minimum range of five years' punishment for murder. Appellant's ground of error is overruled.

In ground of error fourteen appellant contends that the trial court erred in overruling his challenge for cause of venireman Magallanes for the reasons that he could not afford the appellant a presumption of innocence, that he was biased against appellant, and that he had a conclusion as to appellant's guilt.

■ A review of the answers given by the venireman reflects that he was well aware of the rule of law that he was to presume appellant innocent until proven guilty, and that, although he had some preconceived notions about the guilt or innocence of anyone who was brought to trial, he felt that he could afford this presumption to appellant. The venireman also answered that he had no opinion on guilt or

innocence in the instant case. We find no abuse of discretion by the trial court in overruling the challenge. See *Nethery v. State*, 692 S.W.2d 686, 694 (Tex.Cr.App. 1985). Appellant's ground of error fourteen is overruled.

Appellant argues as his ground of error fifteen that the trial court erred in denying his motion to place in evidence certain portions of his confession which were deleted by the State prior to its introduction into evidence. Specifically appellant complains "the deleted portions of appellant's statement would show in mitigation of the offense charged as well as showing the lack of credibility of the accomplice witness, James Moore ("Bubba")."

■ The State is allowed to introduce only part of a confession without committing error, for the accused has the right to introduce the remainder thereof. See Art. 38.24, V.A.C.C.P.; *Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex.Cr.App.1973). Although appellant objected to the deletion of the portions of the confession, the record does not reflect that appellant ever attempted to introduce the remainder of the confession. Therefore, error is waived. Appellant's ground of error fifteen is overruled.

Appellant argues as his ground of error sixteen that the trial court erred in allowing medical records of an autopsy report into evidence based solely on the stipulation of the appellant's attorneys from a prior trial in this cause.

■ The subsequent testimony of the custodian of the records, Dr. Charles Petty, rendered any error harmless.[7] Appellant's ground of error sixteen is overruled.

---

6. Article 35.16(c)(2), supra, states:

"A challenge for cause may be made by the defense for any of the following reasons: ... That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor."

7. The record reflects that Dr. Petty testified that he was the Chief Medical Examiner of Dallas County, and, as such, he was the ultimate custo-

dian of the records and files of the office, that the autopsy reports are kept by the Dallas County Medical Examiner's Office, that it is the regular course of business of that office to keep those records in the regular course of business, by an employee who has personal knowledge of the acts, events or conditions recorded in the autopsy reports, that the autopsy reports were made at or near the time of the autopsy, and that it is a rule of the Dallas County Medical Examiner's Office not to permit the original report to leave the office. Dr. Petty further testified that Dr. Thomas F. Gilchrist performed

In ground of error seventeen it is urged that the trial court erred in allowing bone, blood and hair samples into evidence without a proper showing by the prosecution of an unbroken chain of custody.

Dr. Petty testified that each autopsy performed at the Southwest Institute of Forensic Sciences receives a case number. The autopsy of the deceased received the case number 0886–79. Dr. Petty further testified that samples, such as blood, are removed from the body and placed in various tubes. Each tube is then numbered with the case number of the autopsy, with the addition of the name of the deceased, the date and the initials or signature of the individual who performed the autopsy. A blood sample, Dr. Petty testified, is then placed in a refrigerator immediately so that it will be available to the forensic serologist who is to analyze it.

Benita Harwood, a forensic serologist at the Southwest Institute of Forensic Sciences, testified that she received blood, bone and head hair samples from an autopsy done at the institute. The case number of the autopsy was 0886–79. She testified that she received the bone and head hair sample from Dr. Gilchrist, who performed the autopsy, and the blood sample from the toxicology refrigerator. The blood sample was in a sealed vial, and was marked with the case number 0886–79, the name of the deceased and the initials of the medical examiner. The bone sample was given to Ms. Harwood by Dr. Gilchrist in a sealed, plastic envelope, which had the case number, the deceased's name and the initials of Dr. Gilchrist, the medical examiner. The hair sample was in a manila envelope labeled with the case number 0886–79, the deceased's name and the initials of Dr. Gilchrist, the medical examiner.

■ We find that the testimony from Dr. Petty and Ms. Harwood was sufficient to establish a chain of custody. See *Ochoa v. State,* 394 S.W.2d 172, 174 (Tex.Cr.App. 1965). In addition, there was no evidence indicating loss of possession of or tamper-

ing with the samples in question. We find no error in their admission into evidence. See *Patterson v. State,* 598 S.W.2d 265, 270 (Tex.Cr.App.1980). Ground of error seventeen is overruled.

Appellant argues as his ground of error eighteen that the trial court erred in not allowing him to cross-examine State's witness Charlotte Locashio as to the number and type of prior felony convictions to show the witness' reputation.

The record reflects that the following exchange occurred:

"Q. [by the prosecutor] Charlotte, I want to go into something that is a little bit difficult. You have been convicted of a felony?

"A. Yes, sir.

"Q. Okay, and what was that conviction for?

"A. Delivery of a controlled substance.

"Q. Did you have two charges against you?

"A. Yes, I did.

"Q. Okay, and what kind of punishment did you receive for that?

"A. I got eight years probation.

"Q. Are you currently on probation?

"A. No, I'm not.

"Q. Okay, why not?

"A. I got eight years probation, did half of that, and I was released almost two years ago.

"Q. Okay, were you released early?

"A. Yes, I was.

"Q. Were you released early for good behavior?

"A. Yes, I was.

"Q. Did you go to court for that?

"A. Yes, I did.

\* \* \* \* \* \*

"Q. [by appellant's counsel] ... I want to talk about some things you discussed with the prosecution, the government attorneys, just a minute ago. Let's talk about that, the convictions, first. You said that you were

---

the autopsy and subsequently made the report, that he (i.e. Dr. Petty) had reviewed the report

and agreed with the conclusions therein.

convicted of two felony offenses of delivery of controlled substance?

"A. Yes, sir, I was.

"Q. That was cocaine?

"MR. OLIVER [prosecutor]: Objection. He knows that is improper.

"THE COURT: Sustained.

"MR. OLIVER: I would ask that the jury be instructed to disregard that also.

"THE COURT: The jury is instructed to disregard that.

CONTINUATION BY MR. BAKER [appellant's counsel]:

"Q. Charlotte, did you plead guilty to it?

"A. Yes, I did.

"Q. To both of them?

"MR. OLIVER: Objection, Your Honor. The fact of the conviction can be gone into, but as to underlying circumstances, we have not opened the door to that.

"THE COURT: Sustained."

Appellant argues that he should have been allowed "to fully explore" the previous convictions of Ms. Locashio, and "was denied his constitutional right to confront witnesses against him."

■ This court has held that, although the fact that a witness has been previously convicted of a crime may be introduced into evidence, the details of that offense are inadmissible. See *Murphy v. State*, 587 S.W.2d 718, 722 (Tex.Cr.App.1979). See also Art. 38.29, V.A.C.C.P. We overrule appellant's ground of error eighteen.

■ Appellant argues as his ground of error twenty-one that the trial court erred in not granting a mistrial "sua sponte" after the State, in the presence of the jury requested the trial court to hold defense counsel in contempt of court.

The record reflects that appellant's attorney was cross-examining James Thomas Moore regarding his being charged with capital murder along with appellant when the following occurred:

"Q. Now, Mr. Moore, I need to ask you just a few more questions. Then I'll be through. Did you make a deal with the District Attorney's Office to testify against Noble Mays for forty-five years?

"MR. OLIVER [prosecutor]: Your Honor, I object. That question has already been asked and answered, and he answered that he did.

"THE COURT: Sustained.

CONTINUATION BY MR. MERKLE:

"Q. You were first charged with capital murder, were you not?

"A. Yes.

"Q. Then you were later charged with capital—

"MR. OLIVER: Objection. It's not proper impeachment to talk about charges. We can talk about convictions, and defense counsel is completely aware of that.

"THE COURT: Sustained.

CONTINUATION BY MR. MERKLE:

"Q. You didn't plead to capital murder, did you?

"MR. OLIVER: Objection, Your Honor. I make a motion for contempt at this time.

"THE COURT: Just a minute. Allright, ladies and gentlemen, if you will step outside the courtroom for a minute.

\*    \*    \*    \*    \*    \*

[the jury was excused, and the court heard the arguments of both the State and appellant, ruled, and brought the jury back into the courtroom.]

\*    \*    \*    \*    \*    \*

"THE COURT: All right, ready to proceed.

"MR. MERKLE: Your Honor, first off, in light of the motion by the Assistant District Attorney—

"MR. OLIVER: I withdraw the motion, Your Honor.

"MR. MERKLE: We would like a ruling from the Court.

"MR. OLIVER: I have withdrawn the motion.

"THE COURT: The Court ruled there was no problem there. Everybody is happy, so we'll proceed."

The record reflects that the State's attorney withdrew the motion in the presence of the jury. Therefore, on the facts of this case, we find that it was not error for the trial court not to grant a mistrial sua sponte because of the prosecutor's motion for contempt of court. We overrule appellant's ground of error twenty-one.

The conviction is affirmed.

CAMPBELL, J., concurs in the result.

CLINTON and TEAGUE, JJ., dissent.