Brad Lee GIBSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–94–00331–CR.

Court of Appeals of Texas,
El Paso.

Oct. 5, 1995.

Michael McLeaish, Odessa, for appellant.

John W. Smith, District Attorney, Odessa, for the State.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

CHEW, Justice.

Brad Lee Gibson appeals a conviction for burglary of a building. After the jury found Appellant guilty, the court assessed his punishment at 10 years' imprisonment and a fine of $500, probated. We reverse and direct the entry of a judgment of acquittal.

In his sole point of error, Appellant contends that the evidence is insufficient to support his conviction because the State failed to corroborate the testimony of the accomplice witness, Timothy Carrol. Citing TEX.R.APP.P. 74(f), the State argues that we should not review this point of error since Appellant failed to provide any references to the pages of the record which contain the facts pertinent to his contention. Noting that he is raising a complaint asserting a total absence of corroborative evidence, Appellant responds that he cannot direct the appellate court to that which does not exist. Appellant's brief sets forth the applicable standard of review and contains a brief argument thereby substantially complying with TEX.R.APP.P. 74(p). Under similar circumstances, the Court of Criminal Appeals found that a court of appeals erred in dismissing an appellant's sufficiency complaint for failure to provide record references. Morales v. State, 820 S.W.2d 805, 806 (Tex.Crim.App.1991). Therefore, we will review the merits of this point of error.

When the State relies upon an accomplice witness's testimony, the testimony must be both material and corroborated by independent evidence tending to connect the accused with the offense. TEX.CODE CRIM. PROC.ANN. art. 38.14 (Vernon 1979); Holladay v. State, 709 S.W.2d 194, 200 (Tex.Crim. App.1986). In reviewing the sufficiency of accomplice witness corroboration, the proper focus is not whether the other evidence standing alone sufficiently establishes the guilt of the accused. Cox v. State, 830 S.W.2d 609, 611 (Tex.Crim.App.1992); Spratt v. State, 881 S.W.2d 65, 66 (Tex.App.—El Paso 1994, no pet.). Rather, the test to determine the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then examine the testimony of the other witnesses to ascertain if there is inculpatory evidence which tends to link the accused with the commission of the offense. Cook v. State, 858 S.W.2d 467, 470 (Tex.Crim.App.1993); Spratt, 881 S.W.2d at 67. The corroborating evidence need not directly link the defendant to the crime or be sufficient in itself to establish guilt. Cook, 858 S.W.2d at 470; Spratt, 881 S.W.2d at 67. But if the non-accomplice evidence fails to connect an appellant to the offense, the evidence is insufficient to support the conviction and an acquittal results. Munoz v. State, 853 S.W.2d 558, 560 (Tex.Crim.App.1993); Spratt, 881 S.W.2d at 67.

Judicial experience shows that no precise rule can be formulated as to the amount of evidence that is required to corroborate the testimony of an accomplice witness. Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim.App.1994); Paulus v. State, 633 S.W.2d 827, 844 (Tex.Crim.App.1981). Each case must be judged on its own facts. Gill, 873 S.W.2d at 48; Munoz, 853 S.W.2d at 559. Apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration. Munoz, 853 S.W.2d at 559; Spratt, 881 S.W.2d at 67.

The evidence at trial showed that Timothy Alan Carrol broke into the Corn Dog 7 in December of 1992 and took approximately $1,800. Utilizing Carrol's testimony, the State prosecuted Appellant as a party to the

burglary. Since Carrol was also indicted for the burglary, he is an accomplice witness as a matter of law. *See Farris v. State,* 819 S.W.2d 490, 495 (Tex.Crim.App.1990).

We will first set forth the accomplice witness testimony. Carrol testified that he, along with Daniel Chu, Tanya Chu, and John Guinn, lived with Appellant at the time of the burglary. Carrol said that Appellant told him on two occasions how to break into the Corn Dog 7 and take money from the safe. He said that Appellant wanted to do this to "get even" with the management of Corn Dog 7 for firing him approximately two months earlier. Carrol also explained that both he and Appellant were heavily involved in drug use in December of 1992, and they needed the money to purchase drugs. According to Carrol, Appellant gave him the following information and instructions on how to commit the burglary. Because Corn Dog 7 was the only shop in the mall which did not have a metal security "cage" which was lowered after hours, Carrol could jump the counter and gain access to the interior doors of the business. Even though the first door was locked, Carrol could bump it and it would easily open, and then use a screwdriver to open the second door into the office. Once through the second door, Carrol would find a set of keys hanging on a bulletin board, one of which would open the safe. After he obtained the money, Carrol could exit through the back door undetected. Carrol said that they planned to split the money.

Approximately one week after their first conversation about the burglary, Carrol agreed to do it. Carrol said that Appellant and their roommates all knew that he was going to commit the burglary because they had discussed it together. On the morning following the discussion, all of the roommates awoke early and smoked marihuana together before Carrol left the apartment to commit the burglary. At approximately 7 a.m., Carrol went to the mall and entered through a side door. Noticing that there were people walking in the mall, Carrol waited until there

was no one near before jumping over the counter. He then "bumped" the first door open, and in the process, damaged part of the wall.[1] Because he had forgotten his screwdriver, Carrol took a nail that had been pulled loose from the wall and used it to open the second door. Once he got into the office, he discovered that the keys were not hanging on the bulletin board, so he called Appellant. Appellant told Carrol to look in the desk for the keys and he found them there. Using information Appellant gave him, Carrol was able to find the correct key to open the safe. Carrol retrieved the money from the safe and put it into his jacket. At Appellant's instruction, Carrol then went to the freezer to look for money inside of it. He could not remember whether he used a key to open the locked freezer or broke into it. At any rate, he also obtained money from the freezer. Carrol then exited out the back door and walked back to the apartment. Appellant, John Guinn, Tanya Chu, and a neighbor were there when he arrived. · He gave Appellant $400 to $500 so that he could buy a quarter pound of marihuana.

■ Excluding the accomplice witness testimony, the independent evidence shows that Appellant had the opportunity and a motive to commit the offense. Debra Denise Sutphin testified that she was employed at Corn Dog 7 as manager of the store at the time of the burglary. When she arrived at the store on the morning of December 16, 1992, she discovered that the doors to the front lobby and the office were open. When she entered the office, she found the safe open and two of the deposits that had been in the safe missing. She immediately suspected Appellant. Sutphin based her suspicion on the fact that Appellant had been angry when fired due to his violation of a hair length policy approximately two months before the burglary.[2] She also stated that when he did not receive his final paycheck on time, he stated that "there was a lot he could do to the store" if he did not get his paycheck. Sutphin also

---

1. Other evidence showed that this door was secured by a deadbolt.

2. Although Sutphin was unsure whether Appellant had been fired or had quit, Robert Tavarez,

the owner of the Corn Dog 7, testified that Appellant was fired for violating the store policy concerning the length of his hair.

testified that Appellant, by virtue of his prior employment, knew that the store did not have metal doors prohibiting after hours entry, knew the combination to the safe, and knew that money was kept both in the safe and in the refrigerator. Sutphin explained that the safe, which normally had to be opened by use of the combination and the key, could be opened with only the key if the tumbler had not been moved off of the final number in the combination. She also stated that the combination to the safe and an extra set of keys had been left in an unlocked desk that night.

Arturo Fuentez, a police officer with the Odessa Police Department, testified that he investigated the burglary of the Corn Dog 7. Based upon an anonymous Crime Stoppers tip, and a conversation with an inmate in the county jail identified only as Mr. Woods, Fuentez suspected Appellant and Carrol in the commission of this offense. He also received information from Appellant's roommate, John Guinn, which corroborated the Crime Stoppers tip. Finally, in response to the prosecutor's question asking him to relate the basis of his probable cause to obtain an arrest warrant for Appellant, Fuentez testified that he received written statements from Woods, Carrol, and Guinn "indicating that [Appellant] had taken part and committed this crime."

■ The independent evidence shows that Appellant had a motive to commit this offense in that he had been angry due to his termination from employment two months earlier. The evidence also shows, at least to some extent, that Appellant had an opportunity to commit this offense in that he associated with Carrol and he had knowledge of the lack of security at the business by virtue of his prior employment. Evidence which merely goes to show motive or opportunity of the accused to commit the crime, or an association between the accused and the accomplice, is insufficient alone to corroborate an accomplice witness. *Leal v. State,* 782 S.W.2d 844, 852 (Tex.Crim.App.1989); *Reed v. State,* 744 S.W.2d 112, 127 (Tex.Crim.App. 1988); *Cherb v. State,* 472 S.W.2d 273, 280 (Tex.Crim.App.1971). It may, however, be considered in connection with other evidence tending to connect the accused with the crime. *Reed,* 744 S.W.2d at 127.

The only other evidence which might arguably tend to connect Appellant to the crime is the hearsay testimony of Officer Fuentez that he had received information from Woods, Carrol, and Guinn "indicating" that Appellant had committed this offense. For the following reasons, we conclude that Fuentez' testimony does not serve as independent evidence tending to link Appellant to the crime. The record does not reflect the substance of what the inmate or Guinn told Fuentez or the basis of their knowledge. Thus, it is unclear whether their information is independent of the accomplice evidence and whether, taken alone, it would tend to connect Appellant to the crime. Likewise, it does not appear that Fuentez' probable cause belief concerning Appellant's involvement in the offense is independent of the accomplice evidence. In the absence of a showing that this evidence is independent of the accomplice evidence, it does not serve to corroborate the accomplice witness.

We have found no other evidence which tends to connect Appellant to the commission of the burglary. Because the evidence showing Appellant's motive and opportunity to commit the offense and his association with Carrol is alone insufficient to corroborate the accomplice testimony, the evidence is insufficient to support Appellant's conviction. Accordingly, we reverse the judgment of the trial court and direct the entry of a judgment of acquittal.