Clayton James SNYDER, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–98–00107–CR.

Court of Appeals of Texas,
El Paso.

June 1, 2000.

Discretionary Review Refused
Oct. 18, 2000.

---

**2.** *See Vidaurri v. State,* 49 S.W.3d 880, 887 (Tex.Cr.App.2001) (concurring opinion).

Scott M. Tidwell, McMahon, Tidwell, Hansen, Atkins & Fowler, P.C., Odessa, for Appellant.

Katrina L. Jackson, Dist. and County Atty., Andrews, Charles M. Cobb, Austin, for State.

Before Panel No. 2, BARAJAS, C.J., McCLURE, and CHEW, JJ.

## *O P I N I O N*

DAVID WELLINGTON CHEW, Justice.

This is an appeal from a conviction for capital murder. Appellant was sentenced to life in prison in the Institutional Division of the Texas Department of Corrections for the murder of Lena Opal Easter, in the course of a burglary. Appellant brings three issues before this Court for review: first, that the trial court abused its discretion in admitting into evidence Appellant's oral and written statements because both were subject to the clergy-penitent privilege; second, that the trial court erred in not granting a new trial because the State commented on the defendant's failure to testify; and third, that the trial court erred in not granting a motion for an instructed verdict or a motion for a new trial because there was insufficient evidence to corroborate the testimony of the accomplice witness, and that there was insufficient evidence to show that Appellant committed burglary. We will affirm the conviction.

Appellant was convicted of capital murder for causing the death of Lena Easter, in the course of a burglary, by striking her multiple times in the head. Snyder was an acquaintance of Mrs. Easter's, having performed yard work for her previously.

In his first issue, Appellant contends that his oral and written statements to Sergeant Ardie Deaver, of the Andrews Police Department, are privileged because Deaver should be considered a minister or religious functionary under Rule 505 of the Rules of Evidence. Pursuant to this privi-

lege, Appellant further asserts that the trial court should not have allowed the statements to be presented to the jury as evidence. The pertinent section of Rule 505 reads:

(1) A "member of the clergy" is a minister, priest, rabbi, accredited Christian Science Practitioner, or other similar religious functionary of a religious organization or an individual reasonably believed so to be by the person consulting with such individual.

(2) A communication is "confidential" if made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.

TEX.R.EVID. 505(a). The threshold issue is whether Sergeant Ardie Deaver meets the definition of a member of the clergy.

Deaver is a Sergeant with the Andrews Police Department. He is also the Youth Director at the Andrews Church of God. Appellant also attends the Church of God, and Deaver testified that he knew Appellant in his capacity as an attendee of the church. Appellant attended weekly classes that Deaver taught on Wednesday nights and Sunday mornings, as well as attending regular church services.

On October 28, 1996, Deaver and Detective Tom Bolding, the detective in charge of the investigation, traveled in plain clothes in an unmarked police car to Clayton Snyder's home. Deaver and Bolding approached the home and Deaver asked Snyder if he would step outside. Snyder agreed, asked if anything was wrong, and began to cry. Deaver then told Snyder that he needed to visit with him at the police department. Snyder agreed to accompany Sergeant Deaver and Detective Bolding to the police department in the

unmarked car. Snyder was not placed under arrest or handcuffed.

Upon arrival at the police department, Deaver and Snyder went into Bolding's office to talk. After approximately two hours of discussion, Snyder asked to speak with the pastor of the Church of God, and his roommate. Deaver called the minister, and during the time they were waiting for him to arrive, Snyder told Deaver he "did not mean to kill her." Snyder then visited privately with his roommate and then privately with the Minister of the Andrews Church of God, Lance Baker.

After he spoke with Pastor Baker, Snyder approached Deaver and told him he was "ready to get it off his shoulders." Deaver, Snyder, and Baker went into Detective Tom Bolding's office, and all were present as Deaver read Snyder his *Miranda* warnings. Snyder then waived his rights and executed a written confession in which he admitted to killing Mrs. Easter because she would not give him five dollars she allegedly owed him.[1]

Snyder contends that his statements are privileged because he was communicating with Deaver in Deaver's capacity as a member of the clergy. We note that the issue of *who* is a member of the clergy for the purposes of Rule 505 of the Rules of Evidence is an issue of first impression in Texas. Other courts have addressed other aspects of the application of the rule, such as whether the communication must be penitential, in what types of proceedings may a person assert the privilege, and whether the clergy member may protect the identity of the person seeking counsel. *See Simpson v. Tennant*, 871 S.W.2d 301, 309 (Tex.App.—Houston [14th Dist.] 1994, no writ)("The identity of a person who has made a privileged communication to a clergyman is privileged itself."); *Easley v.*

*State*, 837 S.W.2d 854, 856 (Tex.App.—Austin 1992, no writ)("The privilege in Texas is broader than in some jurisdictions because the communication need not be penitential in order to qualify for protection."); *Nicholson v. Wittig*, 832 S.W.2d 681, 685 (Tex.App.—Houston [1st Dist.] 1992, no writ)("An individual may invoke a privilege regardless of the nature of the underlying proceeding.").

First, we note that the Texas rule does not require that a member of the clergy be an officially ordained minister in a particular religion. A member of the clergy may be a religious functionary similar to a minister, priest, rabbi, or an accredited Christian Science practitioner, or a person that the consulting individual believes is a "religious functionary." It is undisputed that Sergeant Deaver is not an ordained minister, but his status as youth director of his church could be construed as his being a religious functionary, or as a person believed to be so by Clayton Snyder. However, upon the facts of this case, we reject any contention that Clayton Snyder consulted with Sergeant Deaver as a member of the clergy, meaning Snyder's communications to Deaver are not privileged.

Appellant contends that his relationship to Deaver was primarily and almost solely one of parishioner to minister. The record does indicate that Deaver had a relationship with Snyder in his capacity as youth director at the church. Deaver testified at the hearing on the motion to suppress that he was the youth director at the church, an unpaid position, that he planned activities for the youth, that people would confide in him as the youth director, and he would not divulge these communications. He further testified that he hoped that he had

---

1. Other witnesses testified that Snyder's motive was to rob Mrs. Easter of a substantial amount of money that he believed she was hiding in her home.

a relationship with Snyder in his capacity as the youth director, and conceded that on prior occasions Snyder had "confided in [him] . . . about things in his [Snyder's] life that he wanted to talk to [me] about as the Youth Director of the church. . . ." Deaver also testified that during his two-hour conversation with Snyder at the police department, they discussed God and religious matters. He also made clear that he never held himself out to be an ordained priest, minister, rabbi, accredited Christian Science practitioner, or similar functionary in any organized religion, but that he would "talk about God to anybody," and that he "feel[s] that any Christian that has Jesus in their life and knows Jesus is a minister of God." Lance Baker, the ordained pastor of the Andrews Church of God, testified to essentially the same facts regarding Deaver's activities as youth director, but also testified that it was clear to him that Deaver was acting in his capacity as a law enforcement officer when Baker saw him at the police department.

■ We review the trial court's decision on a motion to suppress under an abuse of discretion standard, and "afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Here, Sergeant Deaver's assertion that he was communicating with Snyder as a law enforcement officer is under attack. We will uphold the trial court's determination that Snyder's statements to Deaver were not privileged.

■ We acknowledge that Deaver was known to Snyder in his capacity as a youth director for the Andrews Church of God as well as in his capacity as a law enforcement officer.[2] However, on the night in question, Deaver was not speaking to Snyder at the church, or at his home, or even about church business. Deaver arrived at Snyder's home with another police officer, and asked Snyder to accompany him to the police department, where they spoke for approximately two or three hours. That God or religion was discussed does not automatically elevate the conversation to a privileged communication. In *Banks v. State*, 725 So.2d 711 (Miss.1997), the Mississippi Supreme Court held that a defendant's conversations with a lay minister were not privileged under Rule 505 of the Mississippi Rules of Evidence, which is identical to the Texas rule. *See id.* at 717. The lay minister in that case was similar to Sergeant Deaver in that he was not an ordained minister, but was a deacon in his church, and that he routinely discussed "spiritual issues in the abstract with people as a part of the exercise of his faith." *Id.* The deacon left the discussion of inmate's "personal issues" to the pastor or an elder of his church. *See id.* Similarly, Sergeant Deaver called Pastor Baker to speak in private with Snyder.[3] Although Deaver admitted that his conversation with Snyder involved God and religion, the only inculpatory oral statement that Deaver testified to was Snyder's statement to Deaver that he did not mean to kill Mrs. Easter. This statement was made after the approximately two-hour conversation between Snyder and Deaver, when Snyder knew

---

2. Deaver testified that Snyder knew he was a police officer, and that they had talked on prior occasions about Deaver's job.

3. We can only speculate that these communications dealt with Mrs. Easter's death. The contents of the discussion were not revealed.

In fact, Deaver testified that he did not ask Baker about the content of his discussion with Snyder because he believed Baker might have an obligation as a pastor to keep those communications confidential.

that Pastor Baker was on his way to speak to him.

Further, we find that the trial court did not abuse its discretion in denying the motion to suppress because no evidence existed to show that Snyder, as the consulting person, reasonably believed that Deaver was acting as a religious functionary, who would keep the communications confidential. As previously noted, all communications concerning Mrs. Easter's death, between Snyder and Deaver, took place at the police department, to which Snyder had been brought in a police car, by Deaver and Detective Bolding. Before making his written statement, Snyder was read his *Miranda* rights, and waived the same. The statement complies with the requirements for written statements under Article 38.23 of the Code of Criminal Procedure. In light of these facts, there is simply no way to construe the communications between Deaver and Snyder as the type that would fall under the clergy-penitent privilege. We overrule Appellant's first issue.

■ In his second issue, Appellant contends that the trial court erred in not granting a new trial because the State commented on the defendant's failure to testify.[4] Appellant has waived complaint on this issue because at trial, although an objection was made, there was no request for a mistrial. Tex.R.App.P. 33.1. Additionally, Appellant did not address this ground in his motion for a new trial. We also note that since this alleged error occurred at the punishment phase, and because this was a capital murder case where the death penalty was sought, harm could only have occurred if the Appellant had received the death penalty. Because the

Appellant received a life sentence, even if we addressed whether the argument was error, the Appellant would not be able to show harm. We overrule Appellant's Issue Two.

Finally, Appellant argues that the trial court erred in not granting a motion for an instructed verdict or a motion for a new trial because there was insufficient evidence to corroborate the testimony of the accomplice witness, and that there was insufficient evidence to show that Appellant committed burglary. We disagree.

■ Amy Croy was an accomplice to the offense charged against Appellant. She testified that she was approached by Appellant on the day of the murder and they talked about robbing Mrs. Easter for some money. According to Croy, Snyder thought that Mrs. Easter might have about $5,000 in her house. Croy accompanied Appellant to Mrs. Easter's house and served as a "lookout." She testified Snyder entered the house without knocking or obtaining permission, and that shortly afterwards she heard screams. At that point, Croy ran into the shrubs in the backyard, but Snyder called her name and motioned for her to come back. She approached the house and saw Mrs. Easter lying on the floor in a puddle of blood, twitching and shaking. She testified that she ran away again, but Snyder caught up with her and she asked him what he had done. He told her that he hit Mrs. Easter in the head with a stick, but it had broken so he had kicked her in the head five or six times. He also said that Mrs. Easter would not tell him where the money was, but that he got about $30 from a birthday card.

4. Appellant states in his brief that the improper argument occurred during closing argument in the guilt/innocence phase of the trial. The State points out, and our own reading of the record confirms that the complained-of argument occurred in the punishment phase of the trial.

When the State relies upon an accomplice witness's testimony, the testimony must be both material and corroborated by independent evidence tending to connect the accused with the offense. *See* Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 1979); *Holladay v. State,* 709 S.W.2d 194, 200 (Tex.Crim.App.1986); *Gibson v. State,* 908 S.W.2d 314, 315 (Tex.App.—El Paso 1995, no pet.). In reviewing the sufficiency of accomplice witness corroboration, the proper focus is not whether the other evidence standing alone sufficiently establishes the guilt of the accused. *See Cox v. State,* 830 S.W.2d 609, 611 (Tex. Crim.App.1992); *Gibson,* 908 S.W.2d at 315; *Spratt v. State,* 881 S.W.2d 65, 66 (Tex.App.—El Paso 1994, no pet.). Rather, the test to determine the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then examine the testimony of the other witnesses to ascertain if there is inculpatory evidence which tends to link the accused with the commission of the offense. *See Cook v. State,* 858 S.W.2d 467, 470 (Tex.Crim.App.1993); *Gibson,* 908 S.W.2d at 315; *Spratt,* 881 S.W.2d at 67. The corroborating evidence need not directly link the defendant to the crime or be sufficient in itself to establish guilt. *See Cook,* 858 S.W.2d at 470; *Gibson,* 908 S.W.2d at 315; *Spratt,* 881 S.W.2d at 67. But if the non-accomplice evidence fails to connect an appellant to the offense, the evidence is insufficient to support the conviction and an acquittal results. *See Munoz v. State,* 853 S.W.2d 558, 560 (Tex. Crim.App.1993); *Gibson,* 908 S.W.2d at 315; *Spratt,* 881 S.W.2d at 67.

There is ample evidence to corroborate Amy Croy's testimony, but as to the argument concerning the offense of burglary, it is not necessary to corroborate an accomplice's testimony as to every element of the offense. *See Romero v. State,* 716 S.W.2d 519, 520 (Tex.Crim.App.1986). First, Appellant's confession is corroboration of the offense.[5] In it he admits to going to Mrs. Easter's home to try to collect money she allegedly owed him, and when she said she did not have the money, he struck her several times. Further, Chris Pollett, a non-accomplice witness, testified that Snyder had told him of a place he could get $6,000, a residence near Andrews High School. Snyder was looking for a "lookout" and a "getaway driver," but Pollett moved away before any crime was planned. Snyder also told non-accomplice witnesses Candy Kizer and Aaron Van Brown that he killed Mrs. Easter. Finally, the State introduced DNA evidence taken from blood found on Snyder's shoes and shirt. The DNA expert was able to exclude Mrs. Easter as a source of the blood on Snyder's shirt, but not from the blood on Snyder's shoes. We find that these sources of evidence are sufficient to corroborate the testimony of accomplice Amy Croy, and overrule Appellant's third issue. Having disposed of all of Appellant's issues, we affirm the conviction.

---

5. Appellant contends that this Court's review should not include his confession. However, that is not the law in Texas. "The law in this State is that a defendant's confession may be sufficient to corroborate an accomplice, so long as proof of the confession does not depend upon the testimony of the accomplice." *Farris v. State,* 819 S.W.2d 490, 495 (Tex. Crim.App.1990), *overruled on other grounds by, Riley v. State,* 889 S.W.2d 290 (Tex.Crim. App.1994); *Mays v. State,* 726 S.W.2d 937, 942 (Tex.Crim.App.1986).